**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BENJAMIN LUCERO,

      Plaintiff,

      vs.                                      Civ. No. 21-425 KK

KILOLO KIJAKAZI, Acting
Commissioner of the Social Security
Administration,[1]

      Defendant.

**MEMORANDUM OPINION AND ORDER[2]**

THIS MATTER is before the Court on Plaintiff Benjamin Lucero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 18), filed November 8, 2021. The Acting Commissioner of the Social Security Administration ("Commissioner") responded in opposition to the Motion on February 7, 2022, and Mr. Lucero replied in support of it on February 22, 2022. (Docs. 22, 23.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being otherwise sufficiently advised, the Court finds that the Motion is well taken and should be GRANTED.

## I.  Background

This is Mr. Lucero's second appeal seeking review of the Commissioner's decisions on his claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") under 42 U.S.C. §§ 401-434 and 1381-1383f of the Social Security Act. (Doc. 18

---

[1] Kilolo Kijakazi has been automatically substituted for her predecessor, Andrew Saul, as the defendant in this suit. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 9.)

at 3-4.) Mr. Lucero suffers from the severe, medically determinable impairments of reconstructive surgery of a weight-bearing joint of the left leg, fracture of the left lower extremity, degenerative joint disease of the right wrist, degenerative disc disease of the lumbar spine, fibromyalgia, depression, and post-traumatic stress disorder ("PTSD"). (AR 1109-10.[3]) He does not have a high school diploma or GED, (AR 57, 1411), and was most recently employed as a carpenter and apartment complex maintenance worker before he claims he became disabled. (AR 58-59.) Mr. Lucero has not worked since he fractured his left leg and injured his right wrist in a motorcycle accident on January 29, 2014. (AR 58-59, 62-63, 67, 403-05, 644-46.) On December 17, 2014, at 38 years old, he applied for DIB and SSI, alleging disability because of a metal rod and pins in his leg and knee pain. (AR 98, 108, 117, 147.) His alleged onset date is January 29, 2014, (AR 98, 108, 119, 133), and his date last insured is June 30, 2018. (AR 1109.)

Disability Determination Services found Mr. Lucero not disabled initially and on reconsideration. (AR 106, 116, 132, 146.) Thereafter, Administrative Law Judge ("ALJ") Stephen Gontis held a hearing on the merits of his applications.[4] (AR 45-97.) On January 24, 2018, the ALJ issued an unfavorable decision.[5] (AR 18-32.) The Appeals Council denied Mr. Lucero's request for review and upheld the ALJ's decision on December 11, 2018. (AR 1-4.)

Mr. Lucero sought review of the agency's final decision in this Court on February 11, 2019. (AR 1228-29.) On Mr. Lucero's motion, the Court remanded the matter to the Commissioner, (AR

---

[3] Citations to "AR" are to the Certified Transcript of the Administrative Record filed in this matter on September 7, 2021. (Doc. 15.)

[4] A different ALJ continued a previously scheduled hearing to allow Mr. Lucero to submit additional evidence. (AR 39-44.)

[5] Mr. Lucero filed a subsequent claim for DIB on February 8, 2018. (AR 1200.) At the Appeals Council's direction, the ALJ consolidated the subsequent claim with Mr. Lucero's original claims on remand from this Court. (AR 1107, 1137, 1287.)

1262-83), and on July 7, 2020, the Appeals Council vacated the ALJ's decision and remanded the matter to the ALJ for further proceedings consistent with this Court's decision. (AR 1287-88.) The ALJ held another hearing on December 2, 2020, at which Mr. Lucero and a vocational expert ("VE") testified. (AR 1135-79.) On March 19, 2021, ALJ Gontis issued a partially favorable decision. (AR 1107-25.)

Applying the Commissioner's five-step sequential evaluation process to determine whether Mr. Lucero is disabled,[6] the ALJ found at step one that Mr. Lucero has not engaged in substantial gainful activity since his alleged onset date. (AR 1109.) At step two the ALJ found that, in addition to the severe impairments listed earlier in this section, Mr. Lucero also suffers from the non-severe impairments of asthma, gastritis, and hernias.[7] (AR 1109-10.) At step three, the ALJ determined that Mr. Lucero's impairments do not meet or medically equal the severity of one of the Listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (AR 1110.)

---

[6] The five-step sequential evaluation process requires the ALJ to determine whether:

    (1)    the claimant engaged in substantial gainful activity during the alleged period of disability;
    (2)    the claimant has a severe physical or mental impairment (or combination of impairments) that meets the duration requirement;
    (3)    any such impairment meets or equals the severity of a listed impairment described in Appendix 1 of 20 C.F.R. Part 404, Subpart P;
    (4)    the claimant can return to his past relevant work; and, if not,
    (5)    the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden of proof in the first four steps of the analysis and the Commissioner has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[7] In addition, the ALJ found that Mr. Lucero suffers from the non-severe impairment of "HIV," *i.e.*, human immunodeficiency virus. (AR 1109-10.) However, there is no indication in the record that Mr. Lucero has ever had HIV; in fact, the record affirmatively indicates that he does *not* suffer from this impairment. (AR 870, 1513.)

At step four,[8] the ALJ found that, from January 29, 2014 through February 5, 2020, Mr. Lucero had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a), but with the following specific limitations: the claimant could lift and carry, as well as push and pull, 10 pounds occasionally and less than 10 pounds frequently; sit for six hours in an eight-hour workday; stand and walk for two hours in an eight-hour workday; frequently handle items with the right hand; frequently finger with the right hand; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never work at unprotected heights or in extreme cold; [was able to] perform more than simple but less than complex tasks consistent with semi-skilled work; was able to occasionally interact with supervisors, coworkers, and the public; was able to tolerate few changes in a routine work setting; and time off-task could be accommodated by normal breaks.

(AR 1113.) The ALJ further found that, from February 6, 2020 through the date of his decision, Mr. Lucero has had the same physical RFC except that he can frequently stoop, and the same mental RFC except with an additional limitation, *i.e.*, he

> can understand, remember, and carry[]out more than simple but less than complex tasks consistent with semi-skilled work; is able to occasionally interact with supervisors, coworkers, and the public; is able to tolerate few changes in a routine work setting; *and would be off-task 20 percent of the workday due to a combination of physical and mental impairments*.

(AR 1121 (emphasis added).)

Also at step four, the ALJ found that Mr. Lucero has been unable to perform any of his past relevant work since his alleged onset date. (AR 1122.) Thus, the ALJ proceeded to step five, at which he found that, before February 6, 2020, there were "jobs that existed in significant

---

[8] Step four involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is the claimant's residual functional capacity. *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1023. Third, the ALJ must determine whether the claimant is capable of meeting those demands given his residual functional capacity. *Id.* A claimant who can perform his past relevant work is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

numbers in the national economy that [Mr. Lucero] could have performed[.]" (AR 1123.) The ALJ relied on the VE's testimony that an individual with Mr. Lucero's age, education, work experience, and assigned RFC through February 5, 2020, could perform jobs including cutter and paster of press clippings, document preparer, escort vehicle driver, and nut sorter. (AR 1124.)

However, the ALJ further found that, "[b]eginning on February 6, 2020, considering [Mr. Lucero's] age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that [Mr. Lucero] can perform." (AR 1124.) The ALJ therefore concluded that Mr. Lucero "was not disabled prior to February 6, 2020"—or, consequently, "at any time through June 30, 2018, the date last insured"—but became disabled on February 6, 2020. (AR 1125.) Mr. Lucero now appeals the portion of the ALJ's decision finding that he was not disabled prior to February 6, 2020.[9] (Doc. 18.) The Court provides further background as it becomes relevant to the issues discussed below.

## II.  Standard of Review

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. §§ 405(g); 1383(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not disturb the agency's final

---

[9] By regulation, Mr. Lucero is entitled to judicial review of the ALJ's decision on remand without seeking the Appeals Council's review. *See* 20 C.F.R. § 422.210(a) (claimant may obtain judicial review of "reconsidered determination").

decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Thus, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

### III. <u>Analysis</u>

In his Motion, Mr. Lucero argues that the ALJ erred by failing to consider the opinions of consultative examining psychologist Steven Baum, Ph.D., in assessing Mr. Lucero's first RFC, *i.e.*, his RFC from January 29, 2014 through February 5, 2020. (Doc. 18 at 17-21.) Mr. Lucero also

argues that, in assessing his first RFC, the ALJ improperly relied on the opinions of non-examining state agency consultant Carolyn Goodrich, Ph.D., which Mr. Lucero claims were internally inconsistent. (*Id.* at 24-26.)

The Commissioner responds that the ALJ *did* consider Dr. Baum's opinions and "there is no indication that the ALJ was limiting his evaluation … to a specific timeframe or that he rejected the opinion[s] for lack of temporal relevance." (Doc. 22 at 17-18.) According to the Commissioner, "[t]he ALJ properly evaluated Dr. Baum's opinion[s] based on valid considerations, and with citation to substantial evidence." (*Id.* at 18.) The Commissioner also argues that the ALJ properly relied on Dr. Goodrich's opinions because he reasonably found unskilled work to be compatible with the moderate limitations she identified. (*Id.* at 21-22.)

As explained below, the Court finds that the ALJ erred in two respects.  First, the ALJ erred by failing to consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC. Moreover, although the ALJ did address Dr. Baum's opinions in assessing Mr. Lucero's second RFC—*i.e.*, his RFC from February 6, 2020 through the date of decision—this does not redeem the ALJ's error, because the ALJ failed to adequately explain his rejection of Dr. Baum's opinions. Second, the ALJ erred in assessing Mr. Lucero's first RFC by failing to either (1) incorporate a moderate mental limitation to which Dr. Goodrich opined or (2) explain why he rejected her opinion regarding the limitation. The Court will therefore reverse the portion of the ALJ's decision finding Mr. Lucero not disabled prior to February 6, 2020, and remand this matter so that the ALJ may address the identified errors.[10] *Clifton*, 79 F.3d at 1010.

---

[10] Mr. Lucero has conceded his argument based on *Seila Law LLC v. Consumer Financial Protection Bureau*, — U.S. —, 140 S. Ct. 2183 (2020). (Doc. 23 at 1.) The Court will not consider Mr. Lucero's remaining argument, *i.e.*, that the ALJ erred by failing to weigh the opinions of Claudia Cruz, D.N.P., and Monica Haynie, L.M.H.C., (Doc. 18 at 21-23), because this claim may be affected on remand.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  However, the Court notes that the ALJ described these providers' opinions as "virtually identically

A.      **The ALJ erred by failing to consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC.**

By regulation, ALJs must "consider all medical opinions in the record" and "discuss the weight [they] assign[] to such opinions." *Quintero v. Colvin*, 567 F. App'x 616, 619 (10th Cir. 2014). When an ALJ assigns an RFC that contradicts a medical source opinion, the ALJ must explain why he rejected the opinion. *See Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence."). If the ALJ fails to adequately explain the rejection, the Court must remand the case for the ALJ to do so. *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Givens*, 251 F. App'x at 568.

As noted in Section I, *supra*, the ALJ assessed two RFCs in this case, the first from January 29, 2014 through February 5, 2020, (AR 1113-21), and the second from February 6, 2020 through the date of his decision. (AR 1121-22.) There is no dispute that the ALJ failed to discuss or incorporate Dr. Baum's opinions when he assessed Mr. Lucero's first RFC, though he did discuss them when he assessed the second. (AR 1121-22.) From this, Mr. Lucero infers that the ALJ did not consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC. (Doc. 18 at 19-20.) The Court agrees.

The section of the ALJ's decision discussing Mr. Lucero's first RFC makes no mention of

---

inconsistent," and likely meant to include them in his reference to "these assessments" midway through the following paragraph where he stated that he "affords these assessments little weight, as they are internally inconsistent." (AR 1120.) And in fact, on one set of forms, DNP Cruz and LMHC Haynie opined that Mr. Lucero has no more than "moderate" limitations in concentration, persistence, pace, and social functioning; but, on another set of forms, they simultaneously opined that Mr. Lucero has "marked" difficulties in concentration, persistence, pace, and social functioning. (AR 2244-47 (DNP Cruz, June 28, 2018); AR 2249-52 (LMHC Haynie, July 4, 2018).) When asked about these apparent inconsistencies at the December 2, 2020 hearing, Mr. Lucero's counsel admitted to being "as confused as [the ALJ was]." (AR 1169-70.)

Dr. Baum's opinions. (AR 1113-21.) The Commissioner attributes this to the fact that "[t]he ALJ discussed the record chronologically," (Doc. 22 at 18), but her description of the ALJ's decision is inaccurate. In assessing Mr. Lucero's first RFC, the ALJ discussed, in order:  (1) Mr. Lucero's allegations and testimony, (AR 1113-14); (2) non-opinion evidence of physical impairments, (AR 1114-16); (3) non-opinion evidence of mental impairments, (AR 1116); (4) opinion evidence of physical impairments, (AR 1117-18); and, (5) opinion evidence of mental impairments, (AR 1118-20). Only within each such category did the ALJ "discuss[] the record chronologically," (Doc. 22 at 18), and even then, he appears to have subdivided opinion evidence by non-examining versus examining sources before organizing it by date. (AR 1117-20.) Moreover, this section of the ALJ's decision describes other evidence generated after February 6, 2020, *i.e.*, Mr. Lucero's December 2020 hearing testimony. (AR 1113-14.) Thus, the Court reaches the common-sense conclusion that the ALJ did not mention Dr. Baum's opinions when he assessed Mr. Lucero's first RFC because he did not consider Dr. Baum's opinions in doing so.

Notably, the Commissioner refrains from arguing that the ALJ properly failed to consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC because the opinions do not pertain to the time frame at issue, *i.e.*, January 29, 2014 through February 5, 2020. (*See* Doc. 22 at 17-18.) However, even if she had raised this argument, it would be a post-hoc rationalization the Court could not properly consider. *See Haga*, 482 F.3d at 1207–08 (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (ALJ's decision must be evaluated "solely on the reasons stated in the decision"); *see also Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require

us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

Moreover, in his evaluation report, Dr. Baum referred to medical and mental health records from 2014 through 2020 and relied on "[t]he preponderance of past evaluations" as well as his own evaluation of Mr. Lucero in November 2020. (AR 2533, 2535.) Additionally, the forms he completed instructed him to consider Mr. Lucero's "medical history and the chronicity of findings as from **prior to June 2018**."[11] (AR 2537-41 (emphasis in original).) As such, and absent any temporal rationale from the ALJ, the Court cannot conclude that Dr. Baum's opinions are irrelevant to the time frame from January 29, 2014 through February 5, 2020. In short, the ALJ plainly erred by failing to consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC. *Frantz*, 509 F.3d at 1302–03; *Haga*, 482 F.3d at 1207-08; *Quintero*, 567 F. App'x at 619; *Givens*, 251 F. App'x at 568.

Nevertheless, this error would likely be harmless if, as the Commissioner argues, the ALJ properly weighed and rejected Dr. Baum's opinions "based on valid considerations, and with citation to substantial evidence" when he assessed Mr. Lucero's second RFC. (Doc. 22 at 18.) After all, there is no evident reason to believe the ALJ would have viewed Dr. Baum's opinions more favorably in his first RFC assessment than he did in his second. However, as explained below, the Court cannot agree with the Commissioner that the ALJ provided valid reasons based on substantial evidence for rejecting Dr. Baum's opinions.

---

[11] In *Lane v. Berryhill*, No. 17-cv-1181, 2019 WL 355279, at *5 (D.N.M. Jan. 29, 2019), the court found that a form instructing a provider to "consider [the] patient's medical history and the chronicity of findings as from [date] to current examination" did not necessarily mean that the medical opinions covered the entire time period. Here, however, Dr. Baum's report also shows that his opinions encompassed Mr. Lucero's functioning from 2014 to the date of his evaluation.

Dr. Baum performed a psychological evaluation of Mr. Lucero on November 16, 2020. (AR 2533.) He reviewed records, conducted clinical interviews of Mr. Lucero and his wife, administered psychometric tests, and issued a report. (AR 2533-35.) At the conclusion of this report, he stated that

> [t]he preponderance of past evaluations coupled with this evaluation, support[] diagnoses of moderate to severe impaired cognitive functioning including a very low IQ. There is consistency between providers regarding the clinical diagnoses as well viz., anxiety, depression, PTSD. There is impaired social function and difficulty with emotional equilibrium. There are serious limitations with social interaction and executive function viz social judgment, and diminished capacity to abstract. He reports that he is independent but his wife monitors him daily. His prognosis is poor.

(AR 2535.)

In addition, on November 19, 2020, Dr. Baum completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" form regarding Mr. Lucero. (AR 2537.) On this form, Dr. Baum opined that Mr. Lucero is extremely limited[12] in the abilities to:  understand, remember, and carry out detailed instructions; travel in unfamiliar places or use public transportation; and, set realistic goals or make plans independently of others. (AR 2537.) He opined that Mr. Lucero is markedly to extremely limited[13] in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, also noting that the severity of this limitation "depends on [the] day." (AR 2537.) He opined that Mr. Lucero is markedly limited in the abilities to:  understand and remember very short and simple instructions; maintain attention

---

[12] The form defined an "[e]xtreme limitation" as, "[t]he claimant is not able to function independently, appropriately, effectively, and on a sustained basis." (AR 2537.)

[13] The form defined a "[m]arked limitation" as, "[t]he claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." (AR 2537.)

and concentration for two-hour segments; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; sustain an ordinary routine without special supervision; ask simple questions or request assistance; and, accept instructions and respond appropriately to criticism from supervisors. (AR 2537.) Finally, he opined that Mr. Lucero is moderately limited[14] in the abilities to:  remember locations and work-like procedures; carry out very short and simple instructions; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness[15]; and, respond appropriately to changes in the workplace.[16] (AR 2537.)

The ALJ did not describe Dr. Baum's opinions with precision in assessing Mr. Lucero's second RFC. (AR 1122.) Instead, he merely stated that Dr. Baum "opined that [Mr. Lucero] had marked limitations in various areas, including understanding, remembering, and applying information; interacting with others; and concentration, persisting, or maintaining pace." (AR 1122.) The ALJ then gave Dr. Baum's opinions "little weight" on the basis that they were "not entirely consistent with the longitudinal evidence of record." (AR 1122.) In support of this reason, the ALJ described the following evidence:  (a) at a consultative psychological evaluation in July 2018, Mr. Lucero had "good" immediate recall and "poor" delayed recall and correctly spelled the

---

[14]  The form defined a "[m]oderate limitation" as, "[t]he claimant['] s functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." (AR 2537.) This is compared to a "[m]ild limitation," which the form defined as, "[t]he claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." (AR 2537.)

[15]  Dr. Baum noted that Mr. Lucero "depends on [his] wife" in this area of functioning. (AR 2537.)

[16]  Dr. Baum also documented moderate, marked, and extreme limitations on forms regarding Listings 12.02 Neurocognitive Disorders, 12.04 Depressive, Bipolar and Related Disorders, 12.06 Anxiety and Obsessive-Compulsive Disorders, and 12.11 Neurodevelopmental Disorders. (AR 2538-41.)

word "world" backwards; (b) at another psychological evaluation in August 2018, his score on a mini mental status examination was "in the normal range" and was consistent with his "general academic and cognitive abilities"; (c) mental health records from early 2019 noted unimpaired memory, normal psychomotor activity, denial of hallucinations, good judgment, and the ability to attend and maintain focus, and that Mr. Lucero was "stable and doing well" on prazosin,[17] Paxil,[18] and bupropion[19]; and, (d) "[m]ental status exams in 2020 were consistently unremarkable." (AR 1122.)

However, in giving Dr. Baum's opinions little weight, the ALJ engaged in "impermissible cherry-picking," improperly relying on portions of the record favorable to his position while ignoring significantly probative, unfavorable portions. *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018). "[A]lthough an ALJ is entitled to resolve conflicts in the record, [he] may not pick and choose among medical reports, using portions of evidence favorable to [his] position while ignoring other evidence, or mischaracterize or downplay evidence to support [his] findings." *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)) (citations and quotation marks omitted); *see generally Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Here, the ALJ improperly picked and chose within each category of evidence he described. In the July 2018 consultative psychological evaluation on which the ALJ relied, Shari Spies,

---

[17] Prazosin is used psychiatrically to treat sleep problems associated with PTSD. https://medlineplus.gov/druginfo/meds/a682245.html (last accessed June 24, 2022).

[18] Paxil, or paroxetine, is used to treat depression, panic disorder, social anxiety disorder, obsessive-compulsive disorder, generalized anxiety disorder, and PTSD. https://medlineplus.gov/druginfo/meds/a698032.html (last accessed June 24, 2022).

[19] Bupropion, or Wellbutrin, is used to treat depression. https://medlineplus.gov/druginfo/meds/a695033.html (last accessed June 24, 2022).

Psy.D., noted not only the findings the ALJ described, (AR 1122), but also the abnormal findings that Mr. Lucero could name the president but not the vice president, could identify proverbs but not similarities, and "got confused and needed guidance" when asked to "name five cities."[20] (AR 2254.)

Likewise, in the August 2018 psychoeducational evaluation on which the ALJ relied, Mark Arcuri, Ph.D., noted not only the findings the ALJ described, (AR 1122), but also that Mr. Lucero appeared nervous, and that his "overall cognitive skills" tested "in the Significantly Below Average range," with a "significant discrepancy between overall verbal and nonverbal scores," which Dr. Arcuri explained was "typically indicative of a cognitive injury of some kind."[21] (AR 2259, 2262.) He added that academic testing placed Mr. Lucero "in the elementary grade levels" and that Mr. Lucero's test results "do not support his ability to pass the GED."[22] (AR 2264.) Dr. Arcuri also noted that mental health screening indicated "significant distress relative to [Mr. Lucero's] PTSD," which posed "a significant vocational barrier." (AR 2265.)

The "[m]ental health records from early 2019" on which the ALJ relied are those of Mr. Lucero's psychiatric medication provider, Claudia Cruz, D.N.P. (AR 1122 (citing Ex. 20F/37, 43-44; *see* AR 2325 (Ex. 20F/37); AR 2331-32 (Ex. 20F/43-44).) The records to which the ALJ cited

---

[20] Also, Dr. Spies noted that Mr. Lucero "described his mood as 'moody and irritable,'" and opined that his "ability to interact with the public, coworkers, and supervisors is markedly limited" due to his PTSD symptoms. (AR 2254-55.) Although the ALJ mentioned these findings in describing and rejecting Dr. Spies' opinions, he did not do so in rejecting Dr. Baum's opinions. (AR 1116, 1120, 1122.)

[21] The ALJ referred to this discrepancy several times in his decision but appeared to view it as an indication that Mr. Lucero's test results were unreliable. (*See, e.g.* AR 1111-12, 1116, 1118-20.) In so doing, the ALJ ignored not only Dr. Arcuri's observation that this type of discrepancy is "typically indicative of a cognitive injury of some kind," but also his conclusion that Mr. Lucero "put forth a reasonable effort" on the psychometric tests he administered and that the results were "likely to be a reasonable assessment" of Mr. Lucero's "present cognitive, psychological, and academic functioning." (AR 2258, 2262.)

[22] Dr. Arcuri also concluded that Mr. Lucero "will require extra time in general to learn and perform tasks," particularly "in settings that are more verbal/language oriented." (AR 2263.) Although the ALJ mentioned this finding in weighing Dr. Arcuri's opinions, he did not do so in rejecting Dr. Baum's opinions. (AR 1120, 1122.)

note not only the findings he described, but also that Mr. Lucero's mood was "still mostly depressed" despite his being "on triple antidepressant therapy." (AR 2325-26.) And overall, DNP Cruz's records, which date from November 2017 to September 2020, paint a far less benign picture than the ALJ acknowledged. (Doc. 15-2 at 3; AR 1045-46, 2390.) Although they do document "stable interval[s]," (*see, e.g.*, AR 2331-32 (April 2019)), they also document "difficult" ones, (AR 2301-02 (June 2018), 2348-49 (August 2019), 2372-73 (June 2020), 2390-91 (September 2020)), as well as multiple adjustments to Mr. Lucero's psychiatric medications and recommended treatment due to ongoing or worsening symptoms. (*See, e.g.*, AR 2301-02 (June 2018, increasing dosages of Paxil and prazosin and recommending cognitive behavioral therapy ("CBT") because "depression appears to be worsening"); AR 2307-08 (August 2018, recommending CBT and eye movement desensitization and reprocessing to better target symptoms of PTSD, major depressive disorder ("MDD"), and anxiety); AR 2319-20 (December 2018, increasing dosage of prazosin "to target worsening of nightmares"); AR 2372-73 (June 2020, increasing dosage of Paxil to target "continued" depression, anxiety, and PTSD, and restarting gabapentin[23] "for acute anxiety"); AR 2390-91 (September 2020, switching from Paxil to Cymbalta[24] "to target more symptoms").) In general, these records bear out DNP Cruz's observation, after over a year of treating Mr. Lucero, that he "tends to do okay for short periods of time but then decompensates due to PTSD symptom exacerbation or worsening MDD typically exacerbated by uncontrollable situational stressors." (Doc. 15-2 at 3; AR 1045-46.)

---

[23] Gabapentin "is frequently used in the treatment of anxiety disorders." M. Markota & R. Morgan, "Treatment of Generalized Anxiety Disorder with Gabapentin," Case Reports in Psychiatry (Dec. 14, 2017), at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5745655/ (last accessed June 24, 2022).

[24] Cymbalta, or duloxetine, is used to treat depression and generalized anxiety disorder. https://medlineplus.gov/druginfo/meds/a604030.html (last accessed June 24, 2022).

Finally, the records to which the ALJ cited as evidence of "consistently unremarkable" mental status exams in 2020 do not actually evidence mental status exams, remarkable or otherwise; in fact, some of the cited records do not exist in the administrative record at all. (*See* AR 1122 (citing Ex. 22F/20, 26, 32, 38, 44, 50; Ex. 23F/68, 71, 77-85, 98); *see* AR 2415 (Ex. 22F/20); AR 2421 (Ex. 22F/26); AR 2427 (Ex. 22F/32)[25]; AR 2433 (Ex. 22F/38); AR 2439 (Ex. 22F/44); AR 2445 (Ex. 22F/50); *see also* Doc. 15-2 at 6 (showing that Ex. 23F consists of 2 pages). Furthermore, as noted above, DNP Cruz's records document that Mr. Lucero experienced significant ongoing psychiatric symptoms in 2020. In short, the ALJ improperly picked and chose among the medical reports when he rejected Dr. Baum's opinions in assessing Mr. Lucero's second RFC.

In addition, none of the evidence on which the ALJ relied appears to justify his rejection of Dr. Baum's opinion that Mr. Lucero is markedly limited in the ability to accept instructions and respond to criticism from supervisors. (AR 1122, 2537.) Even if the cited evidence were as one-sided and benign as the ALJ characterized it to be, Mr. Lucero's good immediate recall, ability to spell a five-letter word backwards, and normal mini mental status examination score at evaluations in July and August 2018, and his unimpaired memory, normal psychomotor activity, denial of hallucinations, good judgment, and "stable" condition at mental health appointments in early 2019,

---

[25] The record at AR 2427 is one page of a longer note regarding Mr. Lucero's July 2019 visit to family practitioner Eve Danielle Candelaria, C.N.P. (AR 2423-27.) At this visit, CNP Candelaria assessed and treated Mr. Lucero for left lower leg pain, gastroesophageal reflux disease, lumbar spondylosis, and mild intermittent asthma. (AR 2426-27.) Although there is no record of a mental status exam at AR 2427, on previous pages of the note regarding this visit, CNP Candelaria did record that Mr. Lucero was oriented to person, place, and time and showed normal mood, affect, behavior, judgment, and thought content. (AR 2424-25.) However, there is no indication that Mr. Lucero sought or received any treatment for mental health issues at this visit; rather, at the relevant time, he was receiving his mental health treatment from DNP Cruz and Rio Grande Counseling & Guidance Services. (AR 2342-43, 2348-49, 2531.) Thus, even if the ALJ had properly cited to it (and even if he had identified it by the correct year), CNP Candelaria's normal mental status exam of Mr. Lucero in July 2019 would be of only marginal relevance to the validity of Dr. Baum's opinions.

do not appear to bear on whether his psychological disorders impair his ability to accept instructions and respond to criticism from supervisors independently, appropriately, effectively, and on a sustained basis. Nor does the ALJ's decision supply the missing connection. Also, although the ALJ gave "little weight" to Dr. Spies' opinions, including her similar opinion that Mr. Lucero's "ability to interact with … supervisors is markedly limited," again, the reasons he gave for doing so describe the medical evidence selectively and do not appear to pertain to the limitation in question.[26] (AR 1120, 2255.) In sum, not only did the ALJ err by failing to consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC, but also the ALJ's stated reasons for rejecting Dr. Baum's opinions in assessing Mr. Lucero's second RFC are improper and inadequate and do not serve to redeem the error.

**B.     The ALJ erred by failing to account for a moderate mental limitation to which Dr. Goodrich opined in assessing Mr. Lucero's first RFC.**

Dr. Goodrich, a non-examining state agency consultant, completed a Mental Residual Functional Capacity Assessment ("MRFCA") on October 22, 2015, as part of Mr. Lucero's Disability Determination Explanation ("DDE") on reconsideration. (AR 119, 129-31.) The MRFCA form is divided into four sections that address four different categories of functional mental limitations: understanding and memory limitations, sustained concentration and persistence limitations, social interaction limitations, and adaptation limitations. (AR 129-31.) Each section contains two subsections: a question-and-answer worksheet portion where the consultant rates the claimant's limitations in specified areas, and a narrative portion where the consultant records "the actual mental residual functional capacity assessment" and "describes how the evidence supports

---

[26] In assigning Dr. Spies' opinions little weight, the ALJ listed reasons similar to those he listed in rejecting Dr. Baum's opinions, and also stated that her opinions are "internally inconsistent." (AR 1120.) However, the ALJ did not explain how Dr. Spies' opinions are internally inconsistent, and no inconsistencies are readily apparent. (*See generally* AR 2255.)

each conclusion." (AR 129-31.) Then, at the end of the form, there is a section entitled "MRFC - Additional Explanation," where the consultant may record "[a]ny other assessment information deemed appropriate[.]"[27] (AR 129-31.)

On the worksheet portions of this form, Dr. Goodrich opined that Mr. Lucero is moderately limited in the abilities to:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and, respond appropriately to changes in the work setting. (AR 129-31.)

In the narrative portion of each section of the form, Dr. Goodrich entered, ">." (AR 129-30.) In doing so, she may have intended to refer to the "MRFC – Additional Explanation" portion of the form. (AR 130-31.) There, Dr. Goodrich wrote that Mr. Lucero

> can understand and perform simple and some complex tasks under routine supervision. He can interact appropriately with others and would work best in a position that does not require close supervision. He can adapt to a work situation and would work best in a position that is relatively stable in expectations or that provides advance notice of change.

(AR 130-31.)

---

[27] The complete instructions on the MRFCA form provide:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.

(AR 129.)

In assessing Mr. Lucero's first RFC, the ALJ summarized Dr. Goodrich's Additional Explanation but not the worksheet portions of the MRFCA she completed. (AR 1118.) He then stated that he gave Dr. Goodrich's opinions "significant weight, as they are generally consistent with the longitudinal evidence of record, which demonstrates that the claimant remained capable of performing unskilled work with additional social restrictions."[28] (AR 1118.)

In his Motion, Mr. Lucero contends that Dr. Goodrich's Additional Explanation includes "essentially no limitations" at all. (Doc. 18 at 25.) More particularly, he argues that her Additional Explanation does

> not include limitations involving maintaining attention and concentration for extended periods or to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(*Id.*) According to Mr. Lucero, this renders Dr. Goodrich's opinions internally inconsistent and prevents their use as substantial evidence to support the ALJ's RFC assessment. (*Id.* at 25-26.)

In her response, the Commissioner disagrees that Dr. Goodrich's Additional Explanation includes no limitations at all, asserting that it "effectively ruled out [Mr. Lucero's] ability to

---

[28] The ALJ discussed Dr. Goodrich's opinions in conjunction with the opinions of non-examining state agency consultant Scott Walker, M.D., who assessed Mr. Lucero's mental RFC on initial consideration of his February 2018 DIB application. (AR 1118; *see* AR 1202, 1217-19.) The Court notes that, problematically, the ALJ gave both consultants' opinions "significant weight," applying exactly the same reasoning, even though they are not identical. (AR 1118; *compare* AR 129-31 (Dr. Goodrich) *with* AR 1217-19 (Dr. Walker).) In particular, unlike Dr. Goodrich, Dr. Walker found Mr. Lucero to be markedly limited in the ability to interact with the general public, and moderately limited in the abilities to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to travel in unfamiliar places or use public transportation. (AR 1217-19.) Also, unlike Dr. Goodrich, in the "Additional Explanation" portion of the MRFCA, Dr. Walker opined that Mr. Lucero

> retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant interruptions from psychologically-based symptoms; exercise reasonable judgment; interact appropriately with coworkers; supervisors but perhaps not the general public on a superficial basis.

(AR 1219.) The ALJ did not address the differences between the opinions of Drs. Goodrich and Walker in giving both sets of opinions significant weight.

perform skilled work and restricted his ability to interact with supervisors." (Doc. 22 at 21.) She then suggests that the ALJ found unskilled work to be compatible with the moderate limitations to which Dr. Goodrich opined on the worksheet portions of the MRFCA. (*Id.* at 22.)

The Court finds that the ALJ erred in assessing Mr. Lucero's first RFC by failing to account for a moderate limitation to which Dr. Goodrich opined on a worksheet portion of the MRFCA but which her Additional Explanation did not adequately encapsulate. Specifically, the ALJ failed to account for Mr. Lucero's moderately limited ability, per Dr. Goodrich, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[29] (AR 130, 1113.) According to the agency's Program Operations Manual System ("POMS"),[30] this mental ability is critical for performing unskilled work and its "requirements are usually strict." POMS DI § 25020.010(B)(3)(*i*).

The Commissioner suggests that the ALJ's first RFC assessment is compatible with this limitation because it restricts Mr. Lucero to unskilled work. (Doc. 22 at 22.) And, the Tenth Circuit *has* found in some instances that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."[31] *Smith v. Colvin*, 821 F.3d 1264,

---

[29] Like Dr. Goodrich, Dr. Walker opined that Mr. Lucero is moderately limited in the ability to complete a normal workday and workweek without significant interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1218.) Unlike Dr. Goodrich, however, Dr. Walker qualified his opinion regarding this moderate limitation, writing that Mr. Lucero retains the ability "to complete a routine *work day* without significant interruptions from psychologically based symptoms." (AR 1219 (emphasis added).) Notably, he did not qualify his opinion that Mr. Lucero is moderately limited in the ability to complete a normal *workweek* without significant interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1219.)

[30] "The POMS is a set of policies issued by the Social Security Administration to be used in processing claims." *Anders v. Berryhill*, 688 F. App'x 514, 520 n.2 (10th Cir. 2017) (quotation marks and brackets omitted). The Tenth Circuit defers to POMS provisions unless it finds them to be arbitrary, capricious, or contrary to law. *Id.*

[31] The Tenth Circuit's holdings on this point rest on the nature of the requirements of unskilled work, whereas the ALJ limited Mr. Lucero to semi-skilled work. (AR 1113); *see Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). This

1269 (10th Cir. 2016); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015). However, this is not always the case. For example, a limitation to unskilled work does not always adequately address a claimant's mental limitations. *See Vigil*, 805 F.3d at 1204 ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."); *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."). Thus, "[u]nless the connection (between the limitation and the work) is obvious, … the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

In this case, the connection between the work-related limitations in Mr. Lucero's first RFC and the mental limitation to which Dr. Goodrich opined is not obvious. The RFC's limitations of "more than simple but less than complex tasks," "occasional" interactions with others, and "few changes in a routine work setting," *do* appear to address Mr. Lucero's moderately impaired abilities, per Dr. Goodrich, to understand, remember, and carry out detailed instructions, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (AR 129-30, 1113.) But the connection between the RFC's limitations

---

does not necessarily prevent application of the rule, because all four of the representative occupations on which the ALJ relied are unskilled occupations. (AR 1124.) However, in his reply, Mr. Lucero points out that one of these representative occupations, *i.e.*, that of document preparer, though unskilled, has a reasoning level of three, which the Tenth Circuit has said "seems inconsistent" with a limitation to "simple and routine tasks." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *see* https://occupationalinfo.org/24/249587018.html (last accessed June 24, 2022). And at Mr. Lucero's hearing, immediately after the VE testified that a hypothetical individual with Mr. Lucero's characteristics and first RFC could work as a document preparer, she asked the ALJ, "I believe you said simple, semi-skilled?" and, when the ALJ answered in the affirmative, added, "[a]ll right. Then I'll stick with where I am." (AR 1174.) This suggests that the VE may have viewed the occupation of document preparer as inconsistent with a limitation to unskilled work. Nevertheless, the Court need not determine whether the ALJ effectively limited Mr. Lucero to unskilled or semi-skilled work, because the connection between either limitation and a moderately impaired ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is neither explained nor obvious, as discussed below.

and an impaired ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is unclear. And, absent any explanation from the ALJ on this point, it would be inappropriate for the Court to speculate about what that connection might be. *Cf. Peterson v. Saul*, 19-cv-486, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (restriction to simple, routine tasks did not sufficiently account for moderate limitation in ability to complete normal workday and workweek without interruptions and perform at consistent pace without an unreasonable number and length of rest periods).

Nor does *Fannin v. Commissioner, SSA*, 857 F. App'x 445 (10th Cir. 2021), justify the ALJ's omission. In *Fannin*, the Tenth Circuit held that, when posing hypothetical questions to a VE, an ALJ may rely on a consultant's narrative mental RFC so long as the narrative is consistent with the limitations found on the worksheet portion of the form.[32] *Id.* at 447–48; *see also Smith*, 821 F.3d at 1269 (finding that ALJ incorporated worksheet limitations "by stating how the claimant was limited in the ability to perform work-related activities"). However, the Tenth Circuit

---

[32] In *Fannin* and related cases, the Tenth Circuit relied on the POMS instructions for the SSA-4734-F4-SUP mental RFC assessment form, which is divided into three sections. *See Fannin*, 857 F. App'x at 446-48; *Lee v. Colvin*, 631 F. App'x 538, 540–41 (10th Cir. 2015); *see also* POMS DI 25020.010(B)(1). Here, however, Dr. Goodrich used the electronic Claims Analysis Tool ("eCAT"), and her assessment constitutes the MRFCA portion of the pertinent DDE.

Although the MRFCA portion of the DDE is not divided into three sections like the SSA-4734-F4-SUP, courts have found that Section I of the SSA-4734-F4-SUP is analogous to the worksheet portions of the MRFCA, and Section III is analogous to the narrative portions. *See, e.g.*, *Vienna v. Saul*, No. 18-cv-783, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019) ("Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'"); *but cf. Cordova v. Berryhill*, No. 17-cv-0611, 2018 WL 2138647, at *6 (D.N.M. May 9, 2018) ("[T]he Court cannot agree … that in this case, the ALJ was permitted to ignore the 'Section I' findings when there is no 'Section I' in [the MRFCA form at issue.]").

However, whereas the SSA-4734-F4-SUP "instructs completing psychologists to offer their narrative conclusions separately in Section III, which is labeled 'Functional Capacity Assessment,'" the MRFCA portion of the DDE "instructs completing psychologists to input narrative conclusions after each category of mental function." *Kim L.P. v. Saul*, No. 18-cv-552, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020). Thus, in the MRFCA, the "Section III" narrative is divided across the four sections, requiring the consultant to specify a mental RFC for each category of mental function.

has also made clear that an ALJ may not "turn a blind eye to any moderate limitations enumerated in [the worksheet sections] that are not adequately explained" in the narrative sections. *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *see also Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (explaining that the POMS requires consultants to incorporate in the narrative portion all limitations found in the worksheet portion). Thus, an ALJ may only disregard limitations found in the worksheet portions when the narrative portions "adequately encapsulate[]" them. *Carver*, 600 F. App'x at 619.

As already noted, Dr. Goodrich did not record Mr. Lucero's mental RFC in the four narrative portions of the MRCFA form as instructed. (AR 129-31.) Thus, she did not incorporate the moderate limitations recorded in the worksheet portions into narrative mental RFCs for each category of mental function. Moreover, assuming she recorded her narrative findings in her Additional Explanation, the ALJ still would not be permitted to ignore the worksheet limitation at issue here, because the Additional Explanation does not adequately encapsulate it. Although Dr. Goodrich opined that Mr. Lucero can "perform simple and some complex tasks under routine supervision," and "would work best in a position that does not require close supervision" and "is relatively stable in expectations" or "provides advance notice of change," (AR 130-31), this explanation fails to adequately address her finding that Mr. Lucero is moderately limited in his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.[33] (AR 129-30.)

---

[33] Dr. Goodrich's Additional Explanation is distinct from the consultant's narrative in *Fannin*, which specifically discussed attention and concentration and which the Tenth Circuit therefore found to be consistent with a moderate worksheet limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Fannin*, 857 F. App'x at 446, 448.

When an ALJ does not account for functional limitations a medical source assesses by limiting the claimant to particular kinds of work activity, but instead assigns an RFC that contradicts a medical source opinion, the ALJ must explain why he did not account for the medical opinion in his RFC determination. *Haga*, 482 F.3d at 1208-09. Where the ALJ does not adequately explain his rejection of a medical source opinion concerning the claimant's RFC, the case must be remanded for the ALJ to do so. *Id.* Here, the ALJ did not explain his failure to account for Dr. Goodrich's assessed limitation in Mr. Lucero's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1113.) As such, the case must be remanded for the ALJ to provide the required explanation or account for the limitation in assessing Mr. Lucero's RFC from January 29, 2014 through February 5, 2020.

## C.   The ALJ's errors were not harmless.

The Tenth Circuit "appl[ies] harmless error analysis cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Nevertheless, "harmless error analysis . . . may be appropriate to supply a missing dispositive finding" where a court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.* at 733-34 (quotation marks omitted). Here, the Court cannot confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual questions at issue in any other way.

As discussed in subsections III.A. and B., *supra*, the ALJ erroneously failed to (1) consider Dr. Baum's opinions in assessing Mr. Lucero's first RFC, (2) adequately explain his rejection of Dr. Baum's opinions in assessing Mr. Lucero's second RFC, and (3) account for or explain his rejection of a moderate mental limitation to which Dr. Goodrich opined in his first RFC

assessment. Because he did not adequately explain his treatment of this significantly probative evidence, the Court cannot determine whether the ALJ properly rejected it. Assuming he did not, this evidence could reasonably have led to different findings, *i.e.*, the ALJ may have partially or fully credited Mr. Lucero's statements regarding the limiting effects of his psychological impairments prior to February 6, 2020. This, in turn, would likely have resulted in a more restrictive first RFC. (*See, e.g.,* AR 1176 (VE testified that the need to take extra breaks as a result of mental and physical impairments "would not be allowed in … sedentary, unskilled" jobs).) In these circumstances, the Court cannot say the ALJ's errors were harmless.

## IV.  Conclusion

For the reasons stated above, Mr. Lucero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 18) is GRANTED. This matter is REMANDED to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent